```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**v.**                                       **CRIMINAL NO. 1:18CR39**
                                                              **(Judge Keeley)**

**WILLARD LEE MOSS, JR.,**

       **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

On October 16, 2018, following a two-day trial, a jury found the Defendant, Willard Lee Moss, Jr. ("Moss"), guilty of unlawful possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2), as charged in the one-count indictment (Dkt. No. 44). Post trial, Moss sought to vacate his conviction or, alternatively, a new trial (Dkt. No. 52). For the reasons that follow, the Court **DENIES** Moss's motion (Dkt. No. 52).

### I. BACKGROUND

On August 6, 2018, a grand jury sitting in the Northern District of West Virginia returned a one-count indictment, charging Moss with unlawful possession of a firearm (Dkt. No. 1), to wit:

> On or about February 15, 2018, in Pleasants County, in the Northern District of West Virginia, the defendant, WILLARD LEE MOSS, Jr., having been convicted of a misdemeanor crime of domestic violence, to wit: the offense of Battery in the Magistrate Court of Pleasants County, West Virginia on June 22, 2006, Case No. 06M92; and the offense of Domestic Battery, 2nd Offense on September 1, 2017 in the Magistrate Court of Pleasants

**USA v. MOSS**                                                    **1:18CR39**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

>County, West Virginia, Case No. 17-M37M00064, did knowingly possess, in and affecting commerce, a firearm, to wit: a HiPoint model C9, 9mm caliber pistol; a New England Firearms Co., model Handi Rifle SB 2, .30-06 caliber rifle; a Keystone Sporting Arms, model Crickett, .22 caliber rifle; a New England Firearms Co., model Pardner SB, .410 caliber shotgun; and a Wards Western Field (Mossberg), model 37, .22 caliber rifle, in violation of Title 18, United States Code Sections 922(g)(9) and 924(a)(2).

Moss's jury trial began on October 15, 2018, and lasted two days (Dkt. Nos. 37, 41). The evidence included testimony from numerous witnesses called by the Government, including Special Agent Heather Kozik (Dkt. No. 45).

On November 15, 2018, Moss filed his timely motion for judgment of acquittal or new trial (Dkt. No. 52). The Government filed its response opposing Moss's motion on November 29, 2018 (Dkt. No. 54). Because Moss did not file a reply, the motion is fully briefed and ripe for disposition.

## II. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 33, a court may vacate a criminal conviction and grant a new trial "if justice so requires." However, "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs

**USA v. MOSS**  1:18CR39

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

heavily against it." United States v. Smith, 451 F.3d 209, 217 (4th Cir. 2006). Further, "any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. Pro. 52(a).

### III. DISCUSSION

Moss contends that the Government did not prove at trial that the weapons at issue met the definition of a "firearm" under federal law (Dkt. No. 52 at 4-5). Alternatively, he argues that he is entitled to a new trial because of the material difference between the charges in the indictment and the Government's proof at trial. Id. at 6-8. Finding that the Government presented sufficient evidence at trial, and its theory of the case did not cause Moss prejudice, the Court **DENIES** the motion.

**A. The Government Presented Sufficient Evidence at Trial to Support Moss's Conviction**

Challenging the sufficiency of the evidence, Moss argues that the Government failed to prove that the weapons admitted into evidence at trial were "firearms" under federal law (Dkt. No. 52 at 4-5).

Federal Rule of Criminal Procedure 29(c) provides that, on a defendant's motion, a court may "set aside" a jury verdict and "enter an acquittal." A defendant who challenges the sufficiency of

**USA v. MOSS**                                                                               **1:18CR39**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

the evidence under this Rule faces an "imposing burden." United States v. Martin, 523 F.3d 281, 288 (4th Cir. 2008) (citing United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997)). He must establish that "the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt." Id. (citing United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).

When reviewing the sufficiency of the evidence supporting a criminal conviction, courts are "limited to considering whether 'there is substantial evidence, taking the view most favorable to the Government, to support it.'" Beidler, 110 F.3d at 1067 (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). In other words, the Court must uphold the jury's verdict if, when viewed in the light most favorable to the Government, there is sufficient evidence from which "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997).

In order to convict Moss of the crime of unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2), the Government had to prove the following three elements beyond a reasonable doubt:

4

**USA v. MOSS**                                                                                                   **1:18CR39**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

> One:     The defendant had previously been convicted in a court of a misdemeanor crime of domestic violence;
>
> Two:     The defendant knowingly possessed one or more firearms described in the indictment; and
>
> Three:   The defendant's possession of one or more firearms was in or affecting commerce.[1]

See United States v. Ball, 7 Fed. App'x 210, 214 (4th Cir. 2001) (reciting three elements).

Moss has not challenged a particular element of the offense, but instead argues that the Government failed to prove that the firearms admitted into evidence met the statutory definition of a "firearm"[2] because the Government did not present any testimony at trial establishing this fact (Dkt. No. 52 at 4-5).

Although the Fourth Circuit has not addressed this question in the context of § 922(g), its decision in United States v. Jones, 907 F.2d 456 (4th Cir. 1990), superseded on other grounds by

---

[1] Moss stipulated that the first and third elements were satisfied (Dkt. Nos. 33, 34).

[2] Under federal law,"[t]he term 'firearm' means . . . any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive . . . ." 18 U.S.C. § 921(a)(3)(A).

5

**USA v. MOSS**                                                                    **1:18CR39**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

amendment, U.S.S.G. § 4A1.2, comment. n.6 (Nov. 1990), <u>as recognized in</u> <u>United States v. Byrd</u>, 955 F.2d 536 (4th Cir. 1993), is instructive. In <u>Jones</u>, the Fourth Circuit considered, among other things, whether there was sufficient evidence to support a "conviction under 18 U.S.C. § 924(c) for using a 'firearm' to commit a violent federal crime." <u>Jones</u>, 907 F.2d at 460.

There, the defendants argued that the evidence was insufficient because "the only evidence that a firearm was used came from testimony of witnesses unfamiliar with firearms and from bank photographs." <u>Id.</u> Holding that "the government need not present expert testimony to support a conviction under § 924(c)," the court reasoned that there was sufficient evidence from which rational triers of fact could find the defendant guilty beyond a reasonable doubt because five eyewitnesses had testified that a gun had been used during the robbery. <u>Id.</u>

Because the statutory definition of a "firearm" is the same for § 922(g) and § 924(c) convictions, <u>see</u> § 921(a)(3)(A), the Court concludes that the Government need not elicit specific testimony confirming that a weapon meets the statutory definition of a firearm in order to sustain a § 922(g) conviction. <u>See</u> <u>United states v. Adams</u>, 137 F.3d 1298 (11th Cir. 1998) (finding sufficient

6

**USA v. MOSS**  1:18CR39

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

evidence to support § 922(g) conviction when no direct testimony that weapon met the statutory definition of a firearm); <u>United States v. Munoz</u>, 15 F.3d 395 (5th Cir. 1994) (same).

Accordingly, the relevant question is whether, absent this specific testimony, there was sufficient evidence from which any rational trier of fact could conclude that the weapons listed in the Indictment and admitted into evidence at trial met the statutory definition of a firearm. The Court concludes that there was.

First, whether beforehand or at trial, Moss never questioned whether the weapons met the statutory definition of a firearm. In point of fact, throughout the trial, his counsel referred to the weapons as "firearms," including during opening statements, direct and cross examinations, and closing arguments. <u>See generally</u> Dkt. No. 51. Further, Moss stipulated that the "firearms" at issue moved in and affected interstate commerce (Dkt. No. 34). If Moss had any question whether the weapons satisfied the definition of a firearm, why stipulate that the five firearms listed in the indictment, and later admitted into evidence, had moved in and affected interstate commerce?

Moreover, Moss did not object to the authenticity,

7

**USA v. MOSS**                                                                 **1:18CR39**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S**
**MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

admissibility, or chain of custody of the "firearms" admitted into evidence as Government's Exhibits One through Five (Dkt. No. 51 at 92-93). He also stipulated that those five "firearms" were the same five "firearms" seized from his home and listed in the Indictment. Id. at 93-94. Again, if Moss disputed whether these weapons satisfied the statutory definition of a firearm, why stipulate that the firearms admitted into evidence were the same firearms seized from his home and listed in the Indictment?

Second, the Government presented testimony from two law enforcement officers who discussed the firearms. Id. at 16-32, 90-109. Although Special Agent Kozik could not test fire two of the weapons admitted into evidence (Government Exhibits One and Two), she testified that was because both firearms had trigger locks to which she had no key. Id. at 94-95. Other testimony at trial established that the trigger locks had been installed after Darlene Ellis, a contract social worker for Child Protective Services, expressed her concern to Moss and his long-time girlfriend, Danielle Farson, that Owen Moss, their teenage son, could use the gun without parental supervision. Id. at 45-57.

If these two weapons were not "firearms" because they could not or were not designed to or may not "readily be converted to

**USA v. MOSS**                                                                 **1:18CR39**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

expel a projectile by the action of an explosive," there would have been no need to place a trigger lock on either weapon. 18 U.S.C. § 921(a)(3)(A). And if Special Agent Kozik could not test fire two of the five firearms, a reasoned juror could reasonably conclude that she <u>could</u> test fire the other three firearms (Government Exhibits Three, Four, and Five) admitted into evidence. Even if the weapons could not be test fired, weapons need not be "operable" to satisfy the statutory definition of a firearm. <u>See</u> <u>supra</u> Note 2; <u>see, e.g.</u>, <u>United States v. Adams</u>, 137 F.3d 1298 (11th Cir. 1998) (holding firearm need not be operable for purposes of § 922(g) and compiling cases).

Further, during Deputy Rory Scott Marant's testimony, he identified and described all five weapons admitted into evidence: the New England breakdown .30-06 (Government Exhibit One), the HiPoint pistol (Government Exhibit Two), the New England .410 shotgun (Government Exhibit Three), the .22 long rifle (Government Exhibit Four), and the pink .22 Cricket (Government Exhibit Five) (Dkt. No. 51 at 23-27).

Third, two additional witnesses testified at trial that the .30-06 had been fired and used for hunting. Ms. Ellis testified about Moss's concern that "his son had gotten ahold of the firearm

9

and went up and shot it beside a well . . . ." Id. at 47-48. She later identified that "firearm" as the .30-06. Id. at 48. Larry Dale Farson, Danielle's father, testified that one of the weapons was used to hunt during deer season. Id. at 88-89.

Based on all of this evidence, the Court concludes that there was sufficient evidence at trial for any rational trier of fact to conclude beyond a reasonable doubt that the weapons listed in the indictment and admitted into evidence met the statutory definition of a firearm.

**B. The Government's Theory of the Case Did Not Cause Moss Prejudice**

Next, Moss argues that he is entitled to a new trial because the variance between the date alleged in the Indictment and the Government's theory of the case at trial prejudiced him (Dkt. No. 52 at 7-8). Specifically, he argues that he was prejudiced because, had he known that the Government intended to use evidence of unlawful possession from December 2016 to convict him of unlawful possession of a firearm on or about February 15, 2017, the date charged in the Indictment, he would have prepared a much different defense. See id.

The Fifth Amendment "guarantees that a criminal defendant will be tried only on charges in a grand jury indictment." United States

**USA v. MOSS**                                                            **1:18CR39**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

v. Randall, 171 F.3d 195, 203 (4th Cir. 1999) (quotations omitted). "Therefore, only the grand jury may broaden or alter the charges in the indictment." Id. (citing Stirone v. United States, 361 U.S. 212, 215–16 (1960)). "When the government, through its presentation of evidence or its argument . . . broadens the bases for conviction beyond those charged in the indictment, a constructive amendment—sometimes referred to as a fatal variance—occurs." United States v. Malloy, 568 F.3d 166, 178 (4th Cir. 2009). "An indictment is constructively amended, and a fatal variance occurs, when 'the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment.'" United States v. Allmendinger, 706 F.3d 330, 339 (4th Cir. 2013) (quoting Randall, 171 F.3d at 203).

But "not every difference between the government's proof and the indictment constitutes a fatal variance." Id. (citing United States v. Redd, 161 F.3d 793, 795 (4th Cir. 1998)). "When the government's proof diverges to some degree from the indictment but does not change the crime charged in the indictment, a mere variance occurs." Id. (citing same); see also United States v. Spoor, 904 F.3d 141, 152 (2d Cir. 2018) ("[V]ariance occurs when the charging terms of the indictment are left unaltered, but the

11

**USA v. MOSS**  1:18CR39

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

evidence offered at trial proves facts materially different from those alleged in the indictment."). "Such a variance violates the defendant's Fifth Amendment rights only if it 'prejudices [him] either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense.'" Id. (alteration in original) (quoting United States v. Ashley, 606 F.3d 135, 141 (4th Cir. 2010)).

Here, Moss argues that the Government created a mere variance and caused him prejudice when it used evidence from December 2016 to convict him of unlawful possession of a firearm, which allegedly occurred on or about February 15, 2017 (Dkt. No. 52 at 7-8).[3] Although the Government's theory of the case and evidence at trial created a mere variance, Moss fails to show prejudice.

In the first place, dates are not elements of a crime. United States v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir. 1994). And because they are not elements, a mere variance does not expose Moss to a second prosecution for the same offense. United States v. Johnson, 409 Fed. App'x 688, 689 n.1 (4th Cir. 2011) ("[P]roof of

---

[3] Moss does not argue that the Government's theory of the case and evidence at trial constructively amended the Indictment, creating a fatal variance (Dkt. No. 52).

12

**USA v. MOSS**                                                                                              **1:18CR39**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

different dates could never raise the specter of conviction for a different crime." (citing <u>United States v. Benson</u>, 591 F.3d 491, 497 (6th Cir. 2010)).

Second, the Government's theory of the case did not surprise Moss at trial, nor did it hinder his preparation of a defense. At the final pretrial conference on October 3, 2018, the Government disclosed its theory of the case, explaining that it believed that Moss "was in continuous possession of th[e] guns through the date of the search when they were seized from the house" (Dkt. No. 50 at 10). In other words, the Government's theory of the case was that Moss was in continuous possession of the firearms from December 2016 to on or about February 15, 2017.

Despite being well aware of the Government's theory, Moss and his counsel chose to prepare a so-called "alibi" defense, arguing that Moss could not have possessed the firearms on February 15, 2017, because he was in a regional jail serving a five-day prison sentence for domestic battery (Dkt. No. 52 at 2, 4). Because Moss knew before trial that the Government would present evidence and argue to the jury that Moss was in continuous possession of the firearms from December 2016 through the date alleged in the Indictment, he cannot now claim prejudice.

**USA v. MOSS** **1:18CR39**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S**
**MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL [DKT. NO. 52]**

### IV. CONCLUSION

For these reasons, the Court **DENIES** Moss's motion for judgment of acquittal or new trial (Dkt. No. 52).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: December 21, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE